UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENEEN DUMAS

    Plaintiff,

v.                                                                Case No. 18-12992

GC SERVICES, L.P., UNITED STATES               HON. AVERN COHN
DEPARTMENT OF EDUCATION,

    Defendants.
_____/

# MEMORANDUM AND ORDER GRANTING DEFENDANT DEPARTMENT OF EDUCATION'S MOTION TO DISMISS (Doc. 8)[1]

## I. Introduction

This is a consumer rights case. Plaintiff Deneen Dumas (Dumas) is suing defendant GC Services, L.P. (GC Services) a collection agency, and the United States Department of Education (the government) making claims related to a student loan debt. As will be explained, Dumas believes she resolved her debt when she entered into a settlement agreement with GC Services regarding its collection efforts on the debt. She asserts claims under the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and breach of contract.

Before the Court is the government's motion to dismiss on the grounds that Dumas' claims against it are barred by sovereign immunity and otherwise fail to state a plausible claim for relief. The Court agrees. Accordingly, for the reasons that follow,

---

[1]Although originally scheduled for hearing, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

the motion will be granted.

## II. Background

The relevant facts as gleaned from the record follow. Dumas admits she took out a student loan. At some point thereafter, collection on the loan was assigned to CG Services. Eventually, in April 2011, the debt was assigned to the government for collection.

### A.

In October of 2010, Dumas sued GC Services in state court, claiming "improper and illegal collections and garnishment." Id. at Pg ID 8. To resolve the 2010 action, Dumas and GC Services entered into a settlement agreement in which GC Services paid Dumas $900.00 and agreed, "to no longer implement the garnishment of Plaintiff's wages for purposes of collecting the student loan debt at issue." Id. at Pg ID 32. The settlement agreement also contained a release and discharge provision releasing GC Services from any claims by Dumas. However, there was no reciprocal release providing that Dumas's student loan debt was discharged. Id. at Pg ID 31. The settlement agreement stated that it was the entire agreement between the parties. Id. at Pg ID 32. The government was not a party to the settlement agreement.

### B.

In December 2017, Dumas received a Notice of Proposed Wage Garnishment Due to Debt Owed to U.S. Government. Id. at Pg ID 40. Dumas considered the wage garnishment a breach of her settlement agreement with GC Services based on her claim that the settlement agreement released her from liability for her student loan debt.

C.

Dumas then filed this action in state district court against GC Services following the wage garnishment. Significantly, Dumas alleges that the loan is "paid off" because the settlement agreement with GC services "specifically set forth terms that Plaintiff did not owe the debt." (Doc. 1-1, Pg ID 8, 10.) She later filed an amended complaint adding the government as a defendant. The government then removed the case to federal court.

As to the government, Dumas alleges that the government has adversely reported her student loan status on unspecified dates, resulting in a drop in her credit score. Id. at Pg ID 13. She further alleges that the government ignored her "26 page fax demonstrating she did not owe any debt" which she viewed as a request to correct her credit information. Id. at Pg ID 13-14. The fax contained correspondence regarding the wage garnishment and her settlement agreement with GC Services. Id. at Pg ID 20-45.

III. Legal Standards

The government moves to dismiss under both Rule 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction must be considered prior to other challenges since proper jurisdiction is a prerequisite to determining the validity of a claim. See Gould v. Pechiney Ugine Kulmann & Trefimetaux, 853 F.2d 445, 450 (6th Cir. 1988). When a 12(b)(1) motion is made, the plaintiff has the burden of proving jurisdiction in order to survive the motion. Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

In assessing a Rule 12(b)(6) motion, the district court must construe the

complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001). The factual allegations of the complaint must be enough to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Further, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

"In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), th[e] Court may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice.'" Murray v. Geithner, 624 F. Supp. 2d 667, 671 (E.D. Mich. 2009) (citing 2 James Wm. Moore et al., Moore's Federal Practice 12.342 (3d ed. 2000).

IV. Analysis

A. 12(b)(1)

The government says that Dumas' claims against it under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq must be dismissed for lack of jurisdiction because the government is immune from suit under these statutes. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." Munaco v. United States, 522 F.3d 651, 652 (6th Cir. 2008) (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)). "The objection to a suit against the United States is fundamental, whether it be in the form of an original action, or a set-off, or a counterclaim. Jurisdiction in either case does not exist, unless there is specific Congressional authority for it." United

States v. Shaw, 309 U.S. 495, 503 (1940) (quoting Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 106 (1924). "Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction… which is not to be expanded by judicial decree." Id. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996) (citations omitted). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Id. A court must "construe ambiguities in favor of immunity." Id. The burden of establishing a waiver of sovereign immunity "rests upon the party asserting jurisdiction." Kokkonen, 511 U.S. at 377.

### 1. FDCPA

The FDCPA is intended "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The statute provides that "any debt collector who fails to comply" with the provisions of the FDCPA is subject to civil liability. Id. § 1692k(a). By its terms, however, the FDCPA excludes from the definition of "debt collector" "any officer or employee of the United States or any State to the extent that collecting to attempting to collect any debt is in the performance of his official duties." Id. § 1692a(6)(C).

The Sixth Circuit has not addressed the issue of whether the FDCPA contains a waiver of sovereign immunity. However, courts addressing the issue have uniformly held that the FDCPA does not contain such a waiver. See Wagstaff v. United States

5

Dep't of Education, 509 F.3d 661, 664 (5th Cir.2007); Williams v. United States Dist. Ct. for the Dist. of Newark, New Jersey, 455 F. App'x 142, 143 (3rd. Cir. 2011); Allen v. U.S. Dep't of Education, 755 F. Supp. 2d 122, 124 (D.D.C. 2010); Ha v. United States Dep't of Education, 680 F. Supp. 2d 45, 47 (D.D.C. 2010); Coble v. Wilkins, No. 1:11CV211, 2012 WL 665976, at *2 (M.D.N.C. Feb.29, 2012); Manalansan–Lord v. Direct Loan Servicing Center, No. 4:08cv0676 TCM, 2008 WL 4693410, at *2 (E.D. Mo. Oct. 22, 2008); Little v. Tenn. Student Assistance Corp., 537 F. Supp. 2d 942, 944 (W.D. Tenn. 2008); Sorrell v. Ill. Student Assistance Comm'n, 314 F. Supp. 2d 813, 817 (C.D. Ill. 2004).

In accordance with these decisions, the Court similarly concludes that the FDCPA does not contain an express waiver of sovereign immunity. Therefore, the Court will not assert jurisdiction over Dumas' claim under the FDCPA against the government in accordance with "the longstanding principle that only Congress can waive an executive agency's sovereign immunity." Wagstaff, 509 F.3d at 664.

To the extent that Dumas argues that the government itself has waived its immunity, this argument fails. The ability to waive sovereign immunity lies with Congress alone; thus, any argument that the federal government or one of its agencies waived its immunity "by acting through a third party to collect on [a] student loan debt" must be rejected. Wagstaff, 509 F.3d at 664. See also Ha, 680 F. Supp. 2d at 47; United States v. Skutt, No. 11-13218, 2012 WL 1956855, at *5–6 (E.D. Mich. May 10, 2012), report and recommendation adopted, No. 11-CV-13218, 2012 WL 1957303 (E.D. Mich. May 31, 2012) (dismissing FDCPA counterclaim against the government in a student loan case based on governmental immunity). Therefore, the government is

6

immune from any potential liability under the FDCPA. Dumas' claim must therefore be dismissed.

## 2. FCRA

The Sixth Circuit has also has not addressed the government's sovereign immunity and the FCRA and, as the government notes, circuits have differed. The Ninth Circuit recently found the FCRA does not waive sovereign immunity for damages against the government. Daniel v. National Park Service, 891 F.3d 762, 776 (9th Cir. 2018). In Daniel, the Ninth Circuit noted that while the FCRA broadly defines "person" to include "government or governmental subdivision or agency" and separately provides enforcement provisions against "any person" who violates the statute, the court must "look to the provisions of the whole law," not "isolated provisions" in construing a statute. Id. at 769. The court held that when construing the FCRA as whole, the statute is "ambiguous with respect to whether Congress waived immunity." Id. The court went on to state that reading "person" in the FCRA as a whole to include the federal government would lead to unusual results. Id. at 769-70. The court pointed out that treating the United States as a "person" would subject the sovereign to criminal penalties (§ 1681q), permit the sovereign to be investigated by its own agencies and state governments (§ 1681s), and permit punitive damages (§ 1681n). Id. at 770-71. The court cited Supreme Court precedent that "courts have been 'reluctant to read 'person' to mean the sovereign where…such a reading is decidedly awkward.'" Id. at 770 (citation omitted). The court also noted that there is an explicit waiver of sovereign immunity elsewhere in the FCRA, making it unlikely that Congress obliquely intended to waive sovereign immunity in the liability provision. Id. at 771-72. The legislative history also makes no

reference to such a broad waiver of sovereign immunity. Id. at 774-75. Accordingly, the court concluded that it could not say with confidence that Congress meant to waive sovereign immunity for civil liability even though for some provisions of the FCRA "person" includes the federal government. Id. at 774. Because "any ambiguities in the statutory language are to be construed in favor of immunity," the court lacked jurisdiction. Id.

By contrast, in Bormes v. United States, 759 F.3d 793 (7th Cir. 2014), the Seventh Circuit held the FCRA waived sovereign immunity. In Bormes, the court held that because the statute defined person to include the federal government in § 1681a(b), and the remedy provision of § 1681n applies to "any person," it was a waiver of sovereign immunity. Bormes, 759 F.3d at 795.

Having reviewed both decisions, the Court finds the reasoning of Daniel more persuasive. As the court in Daniel noted, the court in Bormes did not view the FCRA as a whole because it did not address important anomalies created by treating the federal government as a person across the FCRA, like the imposition of punitive damages and criminal penalties. Daniel, 891 F.3d at 773-74. The court in Bormes also did not address the fact that there are express waivers of sovereign immunity in other provisions of the FCRA, or "the unparalleled enforcement regime created by its decision." Id.

Finally, the Seventh Circuit has since questioned the reasoning applied in Bormes where it refused to extend the waiver of sovereign immunity in a Fair and Accurate Credit Transactions Act case to Indian tribes even though Indian tribes are governments. Id. at 774 (citing Meyers v. Oneida Tribe of Indians of Wis., 836 F.3d

8

818, 826 (7th Cir. 2016)).

Because the FCRA does not expressly waive sovereign immunity for liability, and is at best ambiguous, the Court, following Daniel, will also dismiss Dumas' FCRA claim against the government for lack of subject matter jurisdiction. See also Stellick v. U.S. Dept. of Educ., No. 11-0730, 2013 WL 673856, at *3 (D. Minn. Feb. 25, 2013) (explaining several reasons FCRA does not expressly waive sovereign immunity); Gillert v. U.S. Dept. of Educ., No. 08-6080, 2010 WL 3582945, at *3 (W.D. Ark. Sept. 7, 2010) (same).

### 3. APA

In her response, Dumas says that the Court has jurisdiction over her statutory claims against the government based on the Administrative Procedures Act (APA). Putting aside that Dumas has not plead an APA claim, the APA does not apply. The APA does not provide for money damages as Dumas is seeking. See 5 U.S.C. § 702.

### B. 12(b)(6)

### 1. Breach of contract

The government says that Dumas cannot make out a plausible claim for breach of contract against it based on a settlement agreement she entered into with GC Services. "To state a breach of contract claim under Michigan law, a plaintiff must first establish the elements of a valid contract." In re Brown, 342 F.3d 620, 628 (6th Cir. 2003). "The elements of a valid contract in Michigan are 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation." Id. "Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a

preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach caused the plaintiff's injury." Id.

The Court agrees that the government cannot be liable for breach of a contract to which it was not a party. Indeed, the government was not assigned the debt until April 25, 2011–approximately four months after Dumas entered into the settlement agreement. As the government notes "[i]t is hard to conceive how GC Services could bind [the government] to an agreement to discharge a student loan that did not even belong to [the government] at the time of the agreement." (Doc. 8 at Pg ID 126). Dumas does not provide any basis to enforce GC Service's settlement agreement against it. See Doe v. United States, 48 Fed. Cl. 495, 501 (2000) ("The plaintiff bears the burden of proof with respect to the government agent's authority to enter into a contract on behalf of the government…[a]bsent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can exist, regardless of the agent's representations."). Moreover, Dumas fails to allege that the government received any consideration under the settlement agreement. Overall, the settlement agreement simply cannot support a plausible breach of contract claim against the government.

Even if the settlement agreement was somehow enforceable against the government, the settlement agreement did not "set forth terms that Plaintiff did not owe the debt" as she claims. Rather, the settlement agreement merely provided that GC Services would not garnish her wages for purposes of collecting the student loan debt at issue in the underlying litigation. Thus, Dumas fails to state a claim for breach of contract against the government based on her settlement agreement with GC Services.

## 2. FDCPA and FCRA

Notwithstanding the jurisdictional bars, Dumas' claims under the FDCPA and FCRA fail to state a claim because are predicated on her assertion that the settlement agreement she entered with GC Services relieved her of the obligation to repay her student loan debt. Dumas is mistaken. Nothing in the settlement agreement discharged her student loan debt. The settlement agreement covered collection actions by GC Services which GC Services and Dumas settled.

Moreover, any collection action or credit reporting based on Dumas' outstanding loan debt is proper. The government is required to report student loan repayment status to credit bureaus. See 20 U.S.C. § 1080a(a). Finally, to the extent Dumas says the government ignored her requests to validate the debt, she is incorrect. After Plaintiff entered the settlement agreement with GC Services, the government validated her debt.

## V. Conclusion

For the reasons stated above, the government's motion to dismiss is GRANTED. The case continues against CG Services only.

SO ORDERED.

S/Avern Cohn<br>
AVERN COHN<br>
UNITED STATES DISTRICT JUDGE

Dated: 2/11/2019
      Detroit, Michigan